UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM RAMIREZ AND STACEY RAMIREZ,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF EL DORADO, ET AL.,<br><br>Defendant. | No. 2:18-cv-00632-KJM-CKD PS<br><br><br>FINDINGS AND RECOMMENDATIONS AND ORDER |

Before the court is defendants' motion for summary judgment. (ECF No. 39.) Plaintiffs have filed an opposition, (ECF No. 50), and defendants have filed a reply. (ECF No. 53.) Upon review of the documents in support and opposition, the court finds as follows:

**BACKGROUND**

This case arises from plaintiffs' eviction from their home located at 1678 Tionontatu Street, South Lake Tahoe, California 96150. On June 6, 2017, plaintiffs' landlord filed an unlawful detainer action against them in California Superior Court. (ECF No. 39-3 at 4.) Judgment was entered for the landlord on August 1, 2017, and a notice to vacate with a writ of possession was served on plaintiffs the next day. The writ, however, listed an incorrect lockout date, and so a second writ was issued and served on plaintiffs several days later. Before the scheduled lockout date, plaintiffs filed a motion to stay execution of the writ and vacate the judgment, arguing that the amount of damages awarded to the landlord was incorrect. The court

1

and the landlord agreed there was a miscalculation, and so, on August 22, 2017, the court amended its judgment to reflect the proper damages figure and issued a third writ of possession. This third writ was never served on plaintiffs.

On August 30, 2017, plaintiffs claim that they were awoken by a loud knock followed by, "Sheriff's Department, you need to open the door or we will break it down! We have guns!" (ECF No. 1 ¶ 10(g).) Plaintiffs opened the door and the officers told them that they were being evicted pursuant to the writ of possession. Plaintiffs attempted to explain that they were never served with the third writ, they had no notice a lockout date was scheduled, and, consequently, the officers could not lawfully evict them. The officers proceeded with the eviction. Plaintiffs were given approximately twenty minutes to load their vehicle with whatever belongings they could fit before being ordered to leave the premises. Plaintiffs left behind numerous items, as well as their animals (two dogs, four cats, and a bird). (ECF No. 39-1 at 115:16-23.) Although the details are disputed, plaintiffs left the animals with some understanding that they would be taken by Animal Services and could be claimed later. (ECF No. 39-1 at 113:16-115:12.)

An Animal Services officer impounded the animals later that day. (ECF No. 39-1 at 112:13-113:22.) The officer posted a notice of seizure on plaintiffs' door, (ECF No. 39-3), but because plaintiffs had already been evicted, they never received it. Nevertheless, Animal Services were in touch with plaintiffs that same day via telephone and multiple times thereafter. Several weeks passed and plaintiffs never claimed their animals. On September 14, 2017, Animal Services located plaintiffs and personally served them with a letter stating that the deadline to request a post-seizure hearing had lapsed, and that if plaintiffs did not pay the seizure fees and claim their animals within fourteen days, then the animals would be become the property of El Dorado County. (ECF No. 39-3.) It is unclear whether plaintiffs ever recovered their animals.

Sometime after the eviction, plaintiffs returned to their former residence to reclaim their left-behind belongings. Plaintiffs contend that the landlord was placing unlawful conditions on the return of plaintiffs' personal property, such as charging inflated storage fees, and ultimately plaintiffs called the Sheriff's Department. Two officers arrived at the scene, and after speaking with plaintiffs and the landlord, concluded that the dispute was a civil matter and plaintiffs would

need to seek relief in court.  (ECF No. 39-3 at 203:4-6.)

Meanwhile, plaintiffs continued to contest the legality of their eviction in the unlawful detainer action.  The state trial court denied plaintiffs' post-trial motions and affirmed its finding that plaintiffs' eviction was lawful.  Plaintiffs filed a notice of appeal and a petition for a writ of mandate with the El Dorado County Superior Court Appeals Division, seeking to reverse the trial court's decision and reclaim possession of their residence based on allegedly defective service of the third writ.  In both cases the appellate courts held that plaintiffs were evicted pursuant to a valid writ of possession.  Plaintiffs petitioned the California Supreme Court for a writ of certiorari, which was denied.  (ECF No. 39-3.)

On March 23, 2018—while the state court appeals were still pending—plaintiffs filed the instant civil rights action against El Dorado County, the El Dorado County Sheriff's Department, the El Dorado County Animal Services Department, and eleven El Dorado County officers.  (ECF No. 1.)  The eleven officers are sued both in their official and individual capacities, and they can be grouped into five categories: (1) Deputies Gerhart and Elledge, who were present at the eviction; (2) Sergeant Seligsohn and Deputy Harwood, who were present when plaintiffs attempted to reclaim their personal property from their landlord; (3) Chief Brzezinski, Captain Shaw, and Lieutenant Petri, who were the Animal Services officers that spoke with plaintiffs about their impounded animals; (4) Sheriff's Civil Clerk Arellano and Civil Manager Saindon, who spoke with plaintiffs about the various writs of possession; and (5) Commissioner Hoffman, who presided over plaintiffs' unlawful detainer trial.[1]  Plaintiffs have sued all of the defendants under 42 U.S.C. section 1983, alleging violations of plaintiffs' Fourth and Fourteenth Amendment rights.  Plaintiffs have also asserted claims under 42 U.S.C. sections 1985 and 1986, as well as state law claims for violating the California Constitution and California's Bane Act.  Defendants ask this court to enter summary judgment against all of plaintiffs' claims.

/////

---

[1] This court previously dismissed plaintiffs' causes of action and request for injunctive relief against Commissioner Hoffman because they ran afoul of the Rooker-Feldman doctrine.  (ECF Nos. 4, 10.)

3

**LEGAL STANDARD**

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not

establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**DISCUSSION**

Plaintiffs assert seven causes of action: (1) violations of their Fourth and Fourteenth Amendment rights under 42 U.S.C. section 1983; (2) unlawful practice or custom under 42 U.S.C. section 1983; (3) conspiracy to deny plaintiffs due process and subject them to unlawful seizures under 42 U.S.C. section 1985(2); (4) conspiracy to deny plaintiffs' equal protection of the law under 42 U.S.C. section 1985(3); (5) failure to prevent a conspiracy under 42 U.S.C. section 1986; (6) violations of the California Constitution; and (5) violations of California's "Bane Act." (ECF No. 1.) Plaintiffs base their causes of action on four instances of allegedly wrongful conduct: (1) the unlawful eviction; (2) the officers' threats of firearms during the eviction; (3) the officers' failure to order the landlord to follow the law after the eviction; and (4) the improper seizure of plaintiffs' animals.

As discussed below, the court lacks jurisdiction to consider plaintiffs' causes of action to

the extent they are based on the allegedly unlawful eviction. The court does, however, have jurisdiction to consider plaintiffs' causes of action to the extent they are based on the other three instances of wrongful conduct. Nevertheless, all of plaintiffs' causes of action should be dismissed because the evidence fails to raise any genuine dispute of material fact.

A. <u>To the extent plaintiffs' causes of action are based on an unlawful eviction, their causes of action are barred by the Rooker-Feldman doctrine.</u>

Under the Rooker-Feldman doctrine, a federal district court lacks jurisdiction to hear de facto appeals of state court judgments and issues inextricably intertwined with those judgments. A de facto appeal exists when "a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." Noel v. Hall, 341 F.3d 1148, 1164 (9th Cir. 2003). When a de facto appeal exists, the district court "must also refuse to decide any issue raised in the suit that is inextricably intertwined with an issue resolved by the state court in its judicial decision." Id. at 1158. An issue is "inextricably intertwined" where "the relief requested in the federal action would effectively reverse the state court decision or void its ruling." Cooper v. Ramos, 704 F.3d 772, 779 (9th Cir. 2012); see also Doe & Assocs. Law Offices v. Napolitano, 252 F.3d 1026, 1030 (9th Cir. 2001) ("Where the district court must hold that the state court was wrong in order to find in favor of the plaintiff, the issues presented to both courts are inextricably intertwined.").

Here, plaintiffs' suit constitutes a de facto appeal to the extent it is based on an allegedly unlawful eviction. Plaintiffs repeatedly argue that "an illegal lockout [was] performed without the benefit of a valid writ of possession," (ECF No. 50 at 10:12.), and specifically ask this court to "correct" the state court's ruling that the eviction was lawful. (ECF No. 1 ¶ 16.) This court has no jurisdiction to review the state court's ruling on the writ of possession, and thus plaintiffs' causes of action are barred to the extent they require a finding that the eviction was unlawful.[2] See Busch v. Torres, 905 F. Supp. 766, 771–72 (C.D. Cal. 1995) (holding that due process and

---

[2] Defendants separately contend that the doctrines of collateral estoppel and res judicata preclude plaintiffs from arguing that the lockout was illegal. Defendants may be correct. But because the court finds that it lacks jurisdiction to consider such allegations under the Rooker-Feldman doctrine, it does not decide whether collateral estoppel or res judicata also apply.

6

unlawful seizure claims against sheriff's officials for enforcing writ of possession constituted a "challenge to the state court judgment" and were barred by Rooker-Feldman); Cupp v. Straley, No. 15-CV-01565-JD, 2015 WL 4735212, at *2 (N.D. Cal. Aug. 10, 2015) (holding that due process and unlawful seizure claims against Sonoma County were inextricably intertwined with the state court's issuance of the writ of possession); Duenas v. Freitas, No. C:13–0836 SBA, 2013 WL 3298249, at *3–4 (N.D. Cal. Jun. 28, 2013) (holding that the court lacked jurisdiction where federal claims depended on finding state court's writ of possession was invalid).

To be clear, this conclusion does not dispense with any of plaintiffs' causes of action; it merely dispenses with one of the factual theories plaintiffs rely on to support their causes of action.[3] Plaintiffs' other factual theories—i.e., that the officers threatened them with guns during the eviction, that the officers refused to order the landlord to follow the law, and that Animal Services improperly seized plaintiffs' animals—are not barred by Rooker-Feldman, because they may state a claim for relief regardless of whether the eviction was carried out pursuant to a valid writ. Thus, the court will not consider plaintiffs' allegations concerning the validity of the writ or the lawfulness of the eviction when analyzing the merits of plaintiffs' causes of action.

B.   Plaintiffs' section 1983 claims

Plaintiffs assert 42 U.S.C. section 1983 claims against both the municipal officers and the municipal entities for allegedly violating plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments. Section 1983 allows plaintiffs to sue "persons" who violate federal constitutional or statutory rights while acting under color of state law. Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001); Graham v. Connor, 490 U.S. 386, 393-94 (1989). For the reasons below, plaintiffs' section 1983 claims should be dismissed.

1.   Plaintiffs' section 1983 claims against the municipal officers

Plaintiffs have sued the municipal officers in both their official and personal capacities.

---

[3] This true for all of plaintiffs' causes of action except the actions against Civil Clerk Arellano and Civil Manager Saindon. Plaintiffs' causes of action against these defendants are based entirely on their role in "helping to set in play the actions which saw [plaintiffs] removed from their home illegally." (ECF No. 50-1 at 8-9.) Thus, plaintiffs' causes of action against these two officers are barred under the Rooker-Feldman doctrine.

As a threshold matter, plaintiffs' official-capacity claims are redundant with plaintiffs' claims against the municipal entities. "[W]hen both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't, 533 F.3d 780, 799 (9th Cir. 2008); see Vance v. Cty. of Santa Clara, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("[I]f individuals are being sued in their official capacity as municipal officials and the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed."). Because plaintiffs have sued the municipal entities and the municipal officers in their official capacities, plaintiffs' official-capacity claims are redundant and should be dismissed. See Vance, 928 F. Supp. at 996 (dismissing redundant official-capacity claims sua sponte pursuant to the in forma pauperis statute).

Plaintiffs' personal-capacity claims against the officers can be grouped into three categories: (1) a claim against Gerhart and Elledge for allegedly threatening plaintiffs with guns during the eviction; (2) a claim against Seligsohn and Harwood for allegedly failing to take action against plaintiffs' former landlord during the post-eviction property dispute; and (3) a claim against the Animal Services officers for allegedly failing to serve plaintiffs with a proper notice of seizure of their animals. Each of these claims fail because either the officers are protected by qualified immunity or the evidence fails to raise a genuine dispute of material fact.

        i.        The section 1983 claim against Gerhart and Elledge

Plaintiffs allege that Gerhart and Elledge violated plaintiffs' rights under the Fourth Amendment by announcing that they "had guns" during the eviction. (ECF No. 1 ¶ 13.) Plaintiffs' allegations may be construed to assert a claim for use of excessive force in enforcing the writ of possession.

The court does not need to decide whether Gerhart's and Elledge's conduct actually constituted excessive force, because it finds that the deputies are entitled to qualified immunity. Police officers are entitled to qualified immunity if either (1) the facts taken in the light most favorable to the party asserting the injury show that the officers' conduct did not violate a constitutional right, or (2) the right was not clearly established at the time of the alleged violation.

Thompson v. Rahr, 885 F.3d 582, 586 (9th Cir. 2018). In Gerhart's and Elledge's case, the constitutional right at issue was not clearly established.

For a right to be "clearly established," existing "precedent must have placed the statutory or constitutional question beyond debate," such that "every" reasonable official, not just "a" reasonable official, would have understood that he was violating a clearly established right. Id. at 587 (emphasis original). "Thus, the 'dispositive question' is "whether the violative nature of particular conduct is clearly established." Id.

The court cannot conclude that every reasonable officer in Gerhart and Elledge's position would have known that announcing they possess guns while ordering an individual to open the door during an eviction violated the constitution. Existing precedent does not establish "beyond debate" that an officer may use excessive force by announcing he possesses a firearm. To the contrary, the court has not identified any precedent suggesting that reference to a holstered weapon can amount to excessive force under the Fourth Amendment.

To be sure, the Ninth Circuit has clearly established the right of civilians who pose no danger not to have guns pointed at them by police officers. Id. ("[P]ointing guns at persons who are compliant and present no danger is a constitutional violation."); see also Robinson v. Solano Cty., 278 F.3d 1007, 1015 (9th Cir. 2002) (en banc) ("[B]randishing a cocked gun in front of [plaintiff's] face" and threatening to kill him was unreasonable under these particular circumstances.). But pointing a gun at someone and announcing possession of a holstered gun are different. The former constitutes a more imminent and escalated threat of deadly force.

Here, the officers never drew their weapons or pointed them at plaintiffs. The evidence affirmatively shows that, apart from the initial "we have guns" statement, there were no other threats of firearms during the encounter. (ECF No. 39-3 at 90:3–10.) Thus, this case is distinguishable from the Ninth Circuit cases concerning the pointing of guns.

Under these circumstances, plaintiffs did not have a clearly established right to be free from the officers' announcement that they "have guns." Thus, Gerhart and Elledge are protected by qualified immunity, and plaintiffs' section 1983 claim against them should be dismissed.

/////

9

ii.     The section 1983 claim against Seligsohn and Harwood

Plaintiffs also assert a section 1983 claim against Seligsohn and Harwood for refusing "to direct plaintiffs' former landlord to operate within the bounds of California statutes dealing with personal property left at a residence post-lockout." (ECF No. 50-1 at 8.) Following the eviction, plaintiffs returned to the property to reclaim their left-behind belongings, but found that their former landlord had placed certain conditions on the return of the property—such as charging "inflated" storage fees and requiring plaintiffs to remove certain property from the premises before granting plaintiffs access to their other property. (ECF No. 1 ¶ 10(o).) Plaintiffs called the police and Seligsohn and Harwood responded. After investigating the situation, the officers told plaintiffs that the dispute was a civil matter and plaintiffs would need to seek relief in court. (ECF No. 1 ¶ 10(o).)

"The general rule is that a state is not liable for its omissions."[4] Patel v. Kent Sch. Dist., 648 F.3d 965, 971 (9th Cir. 2011). There are two exceptions to this rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." Id. at 971–72. The "special relationship" exception applies when a state "takes a person into its custody and holds him there against his will." Id. at 972.

Here, there is no evidence that either of these exceptions apply. Seligsohn and Harwood neither placed plaintiffs in custody, nor did they affirmatively place plaintiffs in danger. Plaintiffs have therefore failed to raise a genuine dispute of material fact as to whether Seligsohn and Harwood violated their federal rights by refusing to take action against the landlord. Plaintiffs section 1983 claim against these officers should be dismissed.

iii.     The section 1983 claim against Brzezinski, Shaw, and Petri

Finally, plaintiffs assert a section 1983 claim against Animal Services officers Brzezinski,

---

[4] Although this rule refers to the "state," in Patel, the Ninth Circuit applied the rule to a plaintiff's section 1983 claim against an individual acting under color of state law. See Patel, 648 F.3d at 971–72.

Shaw, and Petri. Plaintiffs allege that these defendants violated their Fourth and Fourteenth Amendment rights by seizing their animals without providing proper notice. Specifically, plaintiffs allege that the officers posted the original notice of seizure to the door of plaintiffs' residence after the lockout, and thus they failed to serve plaintiffs with a notice of seizure in accordance with California Penal Code section 597.1.

Even assuming plaintiffs were improperly served with the notice in violation of their constitutional rights, neither Brzezinski, Shaw, nor Petri are the culprits. The evidence is undisputed that Dawn Wood—a nonparty—was the Animal Services officer who impounded plaintiffs' pets and posted the notice of seizure on plaintiffs' door. Brzezinski, Shaw, and Petri were merely the officers who communicated with plaintiffs after the seizure. Plaintiffs' allegations are therefore inapplicable to these officers.

In their opposition, plaintiffs attempt to raise a different theory of liability that applies to Brzezinski, Shaw, and Petri. Plaintiffs argue that these officers were "not attempting to return [plaintiffs'] service animals" and "actively barring [plaintiffs] from having the original Notice of Seizure . . . ." (ECF No. 50-1 at 10.) Plaintiffs, however, submit no evidence to support these allegations. On the contrary, the evidence shows that these officers successfully contacted plaintiffs on several occasions regarding the return of their animals. (ECF No. 39-3 at 112:13-113:7, 124:22-126:12.) Thus, plaintiffs have failed to raise a genuine dispute of material fact as to whether Brzezinski, Shaw, or Petri violated their constitutional rights. Plaintiffs' section 1983 claim against these officers should be dismissed.

2. <u>Plaintiffs section 1983 claims against the municipal entities</u>

In addition to the claims against the individual officers, plaintiffs also attempt to hold El Dorado County, the Sheriff's Department, and the Animal Services Department liable under section 1983.[5] (ECF No. 1 ¶ 18.) A municipal entity may be held liable under section 1983 if

---

[5] The law is unclear as to whether municipal departments—such as the El Dorado County Sheriff's Department—may be properly named in a section 1983 action. Some courts have held that municipal departments are not "persons" subject to section 1983 liability, while others have disagreed. Compare Garcia v. City of Merced, 637 F. Supp. 2d 731, 760 (E.D. Cal. 2008) ("'[P]ersons' do not include municipal departments") with Hurth v. Cty. of Los Angeles, No. CV-095423-SVW-PJWX, 2009 WL 10696491, at *4 (C.D. Cal. Oct. 28, 2009) ("[T]he Sheriff's

"execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." Rodriguez v. Cty. of Los Angeles, 891 F.3d 776, 802–03 (9th Cir. 2018); Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978).

Construing plaintiffs' opposition liberally, they make two separate allegations of injurious policies or customs. First, they appear to allege that El Dorado County (or its Sheriff's Department) had a policy or custom of either instructing or permitting deputies to make "clear threats of firearm use" when enforcing writs of possession. (ECF No. 50-1 at 12:2–7.) Second, they appear to allege that El Dorado County (or its Animal Services Department) had a policy or custom of not properly serving animal owners with notice that their animals have been seized. (ECF No. 50-1 at 12:2–7.)

Plaintiffs submit no evidence to support the existence of either of these policies or customs. At best, the evidence shows isolated incidents of (1) deputies announcing they possess guns while evicting a resident pursuant to a writ of possession, (ECF No. 39-3 at 90:3–10), and (2) an Animal Services officer leaving a notice of seizure at a location where the owner never received it. (ECF No. 39-3 at 112:13-113:7.) But a single unlawful act by non-policymaking employees, such as those at issue here, is not sufficient to impose liability on a municipal entity under section 1983. Busch v. Torres, 905 F. Supp. 766, 772 (C.D. Cal. 1995); see also Davis v. City of Ellensburg, 869 F.2d 1230, 1233–34 (9th Cir.1989) ("a plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee"). Thus, there is no genuine factual dispute as to the existence of an injurious policy or custom. Plaintiffs' section 1983 claims against the municipal entities should be dismissed.

C.  Plaintiffs' section 1985 and 1986 claims

Plaintiffs also sue the individual officers under 42 U.S.C. sections 1985(2), 1985(3), and 1986. Section 1985(2) prohibits conspiracies to obstruct justice, and section 1985(3) prohibits

---

Department is a suable 'person' under [section] 1983."). The court does not weigh in on this debate because plaintiffs' section 1983 claims fail in either case.

conspiracies to deprive individuals of their rights. 42 U.S.C. § 1985. Liability under both subsections requires proof of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." See Griffin v. Brekenridge, 403 U.S. 88, 102 (1971).

Plaintiffs do not allege—and the evidence does not show—that they were targeted as a member of any class, let alone a suspect class. Plaintiffs have therefore failed to raise a genuine factual dispute as to this element of their section 1985 claims. See Bennett v. Cty. of Shasta, No. 215CV01764MCECMK, 2016 WL 3743151, at *9 (E.D. Cal. July 13, 2016) (dismissing plaintiff's section 1985(3) action because plaintiff failed to allege membership of a suspect class).

Additionally, because an action under section 1986 cannot survive without a valid claim for relief under section 1985, plaintiffs' section 1986 claim also fails. Trerice v. Pedersen, 769 F.2d 1398, 1403 (9th Cir. 1985) ("[The Ninth Circuit has] adopted the broadly accepted principle that a cause of action is not provided under 42 U.S.C. § 1986 absent a valid claim for relief under section 1985."). Plaintiffs section 1985 and 1986 claims should therefore be dismissed.

D. <u>Plaintiffs' state law causes of action</u>

Finally, plaintiffs assert two state law causes of action. First, they allege that the individual officers violated the California Constitution Article I, sections 7 and 13 by unreasonably seizing their property and depriving them of due process. As relief, plaintiffs seek only monetary damages. (ECF No. 1 ¶ 36.) But sections 7 and 13 do not permit a private right of action to recover monetary damages. See Cabral v. Cty. of Glenn, 624 F. Supp. 2d 1184, 1196 (E.D. Cal. 2009) (dismissing plaintiff's claims because article I, sections 7 and 13 do not create an action to recover money damages); Roy v. Cty. of Los Angeles, 114 F. Supp. 3d 1030, 1043 (C.D. Cal. 2015) (holding that article I, section 13 does not permit an action for money damages). Plaintiffs' claims under the California Constitution should therefore be dismissed.

Second, plaintiffs allege that the municipal entities, through their agents, violated California Civil Code sections 52 and 52.1 (the "Bane Act"), which imposes liability on a person who "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise" of an individual's constitutional rights. Cal. Civ.

Code § 52.1(b). To prevail on their Bane Act claims, plaintiffs must establish not only that defendants violated their constitutional rights, but that defendants had a "specific intent" to do so. Reese v. Cty. of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018). As discussed above, plaintiffs have not established a violation of their constitutional rights, and even if they had, plaintiffs have not submitted any evidence to support a finding of defendants' specific intent. Thus, plaintiffs' Bane Act claims should be dismissed as well.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' Motion for Summary Judgment be GRANTED.
2. The action be DISMISSED with prejudice as to all defendants.
3. The Clerk of Court be directed to close this case.

In light of these recommendations, IT IS ALSO HEREBY ORDERED that all pleading, discovery, and motion practice in this action are STAYED pending resolution of the findings and recommendations. With the exception of objections to the findings and recommendations and any non-frivolous motions for emergency relief, the court will not entertain or respond to any motions and other filings until the findings and recommendations are resolved.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 3, 2020

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

17.00632.msj

14